UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHEILA WATSON HOPKINS<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD ASSOCIATION,<br><br>Defendant. | Civil Action No. 10-900 (JDB) |

## MEMORANDUM OPINION

Plaintiff Sheila Watson Hopkins brings this action against defendant Blue Cross and Blue Shield Association raising four claims related to her employment termination: breach of contract, wrongful termination in violation of public policy, intentional interference with a prospective economic advantage, and negligent supervision. Defendant moves to dismiss plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted or, in the alternative, moves for summary judgment under Fed. R. Civ. P. 56. For the reasons discussed below, the Court will grant defendant's motion to dismiss plaintiff's claims for breach of contract, intentional interference with a prospective economic advantage, and negligent supervision. As for plaintiff's claim of wrongful termination in violation of public policy, the Court grants summary judgment in favor of defendant.

## BACKGROUND

Plaintiff asserts four claims stemming from her termination of employment on May 15, 2009. Plaintiff was hired as an Executive Secretary at defendant Blue Cross and Blue Shield

Association ("BCBSA") in 1988.  See Plaintiff's Complaint ("Compl.") ¶ 8.  She was promoted in 1995 to the position of Congressional Liaison/Coordinator and in 2001 was offered and accepted the position of Assistant to the Executive Director of Political Affairs.  Id. ¶ 9-10.  In 2004, Ms. Kathy Didawick was promoted to the position of Executive Director of Political Affairs and served as plaintiff's manager for the period covering this suit.  Id. ¶ 14, 16.  In addition to her role at BCBSA, Ms. Didawick also served as Chairman of the Children's 2009 Hospital Vintage Affair, a Co-Chair of the Finance Committee for the March of Dimes Gourmet Gala, a Board member of the American Red Cross National Capital Area Invitational Golf Tournament Committee, and a Board member at the non-profit organization A Hand Up.  Id. ¶ 17.

Beginning in January 2009, plaintiff alleges, Ms. Didawick began assigning her work outside of her role as Assistant to the Executive Director of Political Affairs.  Id. ¶¶ 22, 24, 26, 33-36, 38-40, 42-49, 52-54, 76.  Specifically, plaintiff asserts that she was required to update Ms. Didawick's BCBSA calender with meetings concerning events for the March of Dimes, update Ms. Didawick's "to do" list and compile an address list concerning the Children's Hospital Vintage Affair, schedule a meeting for the A Hand Up Board, and perform other clerical tasks related to these charity events.  Id. ¶¶ 36, 38, 42, 43, 52, 54.  Plaintiff states that she had "reservations" concerning these assignments, but ultimately completed the tasks.  Id. ¶¶ 23, 25, 35, 37.

In April of 2009, plaintiff applied for a position with Ms. Kimberly Bolton, the Director of Communication.  Id. ¶ 70.  Plaintiff asserts that Ms. Bolton had been told by Ms. Alissa Fox, Vice President of Policy, that she was prohibited from interviewing plaintiff for any position because of statements made by Ms. Didawick concerning plaintiff.  Id. ¶¶ 50, 70.  On May 15,

2009, BCBSA terminated plaintiff's employment. Id. ¶ 56.

## STANDARD OF REVIEW

**I.    Motion to Dismiss**

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. District of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to

dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (explaining that the court has "never accepted legal conclusions cast in the form of factual allegations").

**II.  Summary Judgment**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

### I.  Claim One: Breach of Contract

In her complaint, plaintiff asserts that defendant breached her employment contract by assigning her work outside of her job description. Compl. ¶¶ 22, 24, 26, 33-36, 38-40, 42-49, 52-54, 76. District of Columbia law has long established that "unless a contrary contractual intent is clearly expressed, all employment is at-will." Turner v. Federal Express Corp., 539 F. Supp. 2d 404, 410 (D.D.C. 2008) (citing Green v. Bowne of N.Y. LLC, 2002 U.S. Dist. LEXIS 16872 at *1-2 (D.D.C. Sept. 5, 2002)). Under the at-will employment doctrine, the employment relationship can be terminated by either party for any reason, or no reason, at any time. See

Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991); Lance v. United Mine Workers of America 1974 Pension Trust, 355 F. Supp. 2d 358, 360 (D.D.C. 2005). An implied employment contract, however, can be created when the policies and procedures implemented by the employer do not coincide with the employment-at-will doctrine. For example, an implied contract may "arise from the language of an employee handbook or manual" that is at odds with the principles of at-will employment. Carter v. George Wash. Univ., 180 F. Supp. 2d 97, 109 (D.D.C. 2001) (citing Washington Welfare Ass'n, Inc. v. Wheeler, 496 A.2d 613, 615 (D.C. 1985)).

Plaintiff contends that an implied employment contract was created through the defendant's policies, including the BCBSA Policy document 210: Code of Business Conduct Standard and Ethics Guidelines for Association Business Practices and the BCBSA 2008 Compensation and Performance Guidelines for Managers. See Pl's Mem. in Opp'n to Def's Mot. for Summ. J. ("Opp'n") at 5-6. Plaintiff asserts that she was entitled to rely on these documents because they "relate to employment relationship [sic], employee behavior and provide procedural requirements to be complied with and conduct to be avoided." Opp'n at 6. In response, defendant points to the disclaimer BCBSA placed on its human resources ("HR") materials as evidence that no implied contract was created. See Def's Mot. to Dismiss ("Def's Mot.") at 6-7. The language in the disclaimer clearly confirms the existence of an at-will employment relationship:

> BCBSA reserves the right to eliminate, change, or modify this policy at any time. Also, the language used in this policy should not be construed as creating a contract of employment between BCBSA and any of its employees or otherwise altering an employee's at-will employment relationship with BCBSA.

Def's Mot. at 7; Opp'n at 7.

Of course, the mere existence of a disclaimer is not enough, on its own, to dispel whether the parties created an implied contract. See Strass v. Kaiser Found. Health Plan of Mid-Atlantic, 744 A.2d 1000, 10013-14 (D.C. 2000). If a disclaimer is "rationally at odds with other language" in the employee manual and employer documents, then the presence of a disclaimer is not dispositive as to the issue of whether an implied contract has been created. Greene v. Howard Univ., 412 F.2d 1128, 1135 (D.C. Cir. 1969). Although the D.C. Circuit has acknowledged that language that is at odds with the disclaimer and "clear enough in limiting the right to terminate to specific causes or events" may overcome the presumption of at-will employment, a disclaimer that "clearly reserve[s] the employer's right to terminate at will" will be enforced. United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 746 (D.C. Cir. 1998) (citing Sisco v. GSA Nat'l Capital Fed. Credit Union, 689 A.2d 52, 55 (D.C. 1997)).

Here, the disclaimer contained in BCBSA HR materials clearly establishes that the HR manuals and distributed polices do not alter any employee's at-will status at BCBSA. Plaintiff argues that an implied contract exists because the disclaimer did not appear in a limited number of BCBSA policy documents. Opp'n at 5. The Court does not agree. The sections of the BCBSA 2008 Compensation and Performance Guidelines for Managers that plaintiff refers to are not "rationally at odds" with the disclaimer language. See Greene, 412 F.2d at 1135; Opp'n at 6; Def's Reply Mem. at 3. Hence, the language of the policy documents does not overcome the presumption of at-will employment. There is simply no doubt that an at-will employment relationship existed between the parties and that it was not altered by any BCBSA HR materials, and therefore plaintiff's claim of breach of contract will be dismissed.

## II. Wrongful Termination

In the District of Columbia, it is well established that at-will employment can be terminated for any reason, or no reason, at any time by either party. See Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991). However, a very narrow exception to the at-will doctrine commonly referred to as the "public policy exception" is recognized. Id.

Originally, this exception was narrowly crafted to protect employees "when the sole reason for the discharge [was] the employee's refusal to violate the law, as expressed in state or municipal regulation." Id. at 34. In Adams, the court recognized the unfair and unproductive situation employees faced when forced to choose between breaking the law and keeping their job. Id. The public policy exception serves to protect these employees from otherwise legal termination under the at-will doctrine. Id. For several years after Adams, courts required a plaintiff raising a public policy exception as part of a wrongful discharge claim to show by a preponderance of the evidence that the sole reason for the wrongful discharge was the employee's refusal to violate the law. Id. at 34. However, recognizing the limitations of this exception, the court in Carl v. Children's Hosp., 702 A.2d. 159 (D.C. 1997), created a case-by-case standard that included those claims "solidly based on a statute or regulation that reflects that particular public policy to be applied or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct." Carl, 702 A.2d at 163. This new standard expanded the public policy exception, but plaintiffs still must show that the exception is "firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular public policy being relied upon." Id. at 162. It has been found, for example, that plaintiffs that can demonstrate a close fit between their employment termination and the public policy embodied in whistler

blower or workplace safety laws can succeed under a Carl analysis. See Warren v. Coastal Intern. Sec., Inc., 96 Fed. Appx. 722, 722-23 (D.C. Cir. 2004); Davis v. Gables Residential/H.G. Smithy, 525 F. Supp. 2d 87, 101 (D.D.C. 2007). The relationship between the relevant statute or regulation and the proscribed conduct must be "carefully tethered . . . [and] . . . solidly based." Carl, 702 A.2d at 164.

Here, the success of plaintiff's claim of wrongful termination hinges on two factors: (1) whether the clerical tasks plaintiff was assigned to complete for her supervisor Ms. Didawick were outside the scope of her job description; and (2) if so, was plaintiff's termination closely tied to the public policy mandate recognized in section 501(c)(3) of the Internal Revenue Code ("IRC").

Ultimately, plaintiff fails to satisfy the requirements for a successful wrongful termination in violation of public policy claim under either the Adams or the Carl framework. She cannot succeed under an Adams assessment, because she agreed to perform these tasks several times and thus was not terminated *solely* for her refusal to violate the law. See Riggs v. Home Builders Inst., 203 F. Supp. 2d 1, 15 (D.D.C. 2002) (emphasizing that the plaintiff would not succeed under an Adams framework "first because of his failure to refuse to violate the laws, and second, because the 'sole reason' for his termination could not have been his refusal to violate the law" (citing Thigpen v. Greenpeace Inc., 657 A.2d 770, 771 (D.C. 1995))(emphasis in original)).

Moreover, plaintiff's claim also fails under the more lenient Carl analysis. Plaintiff asserts that the clerical tasks she was assigned to perform were outside of her job description and the proper function of the BCBSA, and thus threatened to put the Association's tax-exempt status at risk. Opp'n at 10. To succeed under Carl, plaintiff must "specify precisely how the alleged

activities violate section 501(c)(3) under the relevant regulations." Riggs, 203 F. Supp at 13-14. It is clear that "as with the policy of protecting public health [recognized in earlier public policy cases], there is a clear mandate of public policy against the subsidization of private political activity by the taxpayers . . . that is solidly based on section 501(c)(3)." Id. at 21. But plaintiff has failed to establish the close fit between the public policy mandate and the conduct in question here. There is, of course, nothing political about the clerical tasks plaintiff was allegedly required to do.

The court "'need only decide' whether the firing, because of the plaintiff's conduct, 'is sufficiently within the scope of the policy embodied in the statute so that a court may consider imposing liability on [the defendant] for [the plaintiff's] termination for otherwise permissible reasons.'" Riggs, 203 F. Supp. at 21 (quoting Carl, 702 A.2d at 164). The clerical work plaintiff alleges she was required to perform, however, does not appear to be the type of activity with which section 501(c)(3) is concerned. Under section 501(c)(3), an organization will not operationally qualify for tax-exempt status if a substantial part of its activities furthers a non-exempt purpose. See § 501(c)(3)-1(c)(1). Although a single non-exempt purpose can defeat the exemption if it is "substantial in nature," the facts alleged by plaintiff do not support such a finding. See Better Business Bureau v. United States, 326 U.S. 279, 283 (1945).

Plaintiff asserts that defendant required her to perform numerous tasks outside her job description, but she "does not specify precisely how the alleged activities violate section 501(c)(3)." Riggs, 203 F. Supp. 2d at 14. Again, even if beyond the scope of her regular assignments, the tasks she performed had no political purpose or appearance that would offend section 501(c)(3). Plaintiff merely "disagreed with management decisions and [has] not allege[d]

a violation of law or action contrary to public policy." Liberatore v. Melville Corp., 168 F.3d 1326, 1331 (D.C. Cir. 1999). Hence, plaintiff's complaint fails to satisfy the second prong of Carl, which requires a "close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." Id. at 21.

Because matters outside the pleadings have been presented to the court on this claim, it must be treated as one for summary judgment under Rule 56. See Fed. R. Civ. P. 12(d). Although the party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish more than the "mere existence of a scintilla of evidence in support of its position." Anderson , 477 U.S. at 252. Plaintiff presents no evidence that the tasks she was assigned to perform varied substantially from the purpose of BCBSA's tax-exempt status such that it put the Association's status under section 501(c)(3) in jeopardy. In addition, the complaint and attached documents, including affidavits and exhibits, do not show that the conduct at issue in plaintiff's termination was within the scope of the policy behind section 501(c)(3) such that the relationship between section 501(c)(3) and the proscribed conduct is "carefully tethered . . . [and] . . . solidly based." Carl, 702 A.2d at 164. The Court must therefore grant defendant's motion for summary judgment on the claim of wrongful termination.

### III. Intentional Interference with Prospective Economic Advantage

The "tort of intentional interference with a prospective business advantage runs 'parallel to that for interference with existing contracts.'" PM Servs. Co. v. Odoi Assocs., 2006 U.S. Dist. LEXIS 655, *108 (D.D.C. Jan. 4, 2006) (citing Brown v. Carr, 503 A.2d 1241, 1247 (D.C. 1986)). To succeed on a claim for intentional interference with a prospective business

advantage, a plaintiff must show "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (citing Bennett Enters. v. Domino's Pizza, Inc., 45 F.3d 493, 499 (D.C. Cir. 1995)). And to survive a motion to dismiss, the plaintiff must "allege 'business expectancies, not grounded in present contractual relationships, but which are commercially reasonable to expect.'" PM Servs. Co., 2006 U.S. Dist. LEXIS at *109 (citing Sheppard v. Dickstein, Shapiro, Morin & Oshinsky, 59 F. Supp. 2d 27, 34 (D.D.C. 1999)). The expectancies most often protected by the courts can best be classified as future contractual relations, such as the prospect of obtaining employment or the opportunity to obtain and establish customer relations. See Carr v. Brown, 395 A.2d 79, 84 (D.C. 1978).

Here, plaintiff asserts that her supervisor, Ms. Didawick, interfered with her prospect of obtaining employment. Plaintiff alleges that Ms. Didawick told Ms. Bolton that she did not want Ms. Bolton to interview plaintiff for a position with the Manager of Communications. See Opp'n at 19. Plaintiff argues that "but for the actions of Kathy Didawick, [she] would have been selected for the position." See Opp'n at 20. However, plaintiff fails to address, let alone articulate facts sufficient to meet, the four-part standard set out in Browning v. Clinton. Although plaintiff might be able to meet the first two requirements – that a valid business expectancy existed because she was the only employee qualified for the position and that Ms. Didawick, as an agent of BCBSA, knew of that expectancy – her claim fails on the third prong of the analysis, under which plaintiff must show "intentional interference inducing or causing a

breach or termination of the relationship or expectancy." Browning, 292 F.3d at 235.[1] In order to satisfy this prong, the conduct at issue must rise to the level of "egregious conduct such as libel, slander, physical coercion, fraud, misrepresentation, or disparagement." Sheppard, 50 F. Supp. 2d at 34 (citing Genetic Sys. Corp., v. Abbott Labs., 691 F. Supp. 407, 423 (D.D.C. 1998)). Throughout her complaint and memorandum in opposition, plaintiff fails to articulate the precise conversation that serves as the basis for her intentional interference with a prospective economic advantage claim. She alleges only that Ms. Didawick told a BCBSA employee that she did not care for the plaintiff. See Opp'n at 19. Accepting plaintiff's allegation as true, as the court must, the fact that Ms. Didawick informed a BCSBA employee that she did not care for plaintiff does not rise to the required level of libel, slander, misrepresentation, or disparagement.

Furthermore, "an employer cannot interfere with its own contract." McManus v. MCI Commc'ns Corp., 748 A.2d 949, 958 (D.C. 2000); see also American Petroleum Inst. v. Technomedia Int'l, Inc., No. 09-529, 2010 U.S. Dist. LEXIS 31383 at *33-35; Donohoe v. Watt, 546 F. Supp. 754, 757 (D.D.C. 1982) (holding that "a defendant's conduct under his own contract with the plaintiff may or may not rise to the level of a breach of that contract, but it cannot support an action for interference with it"). Tortious interference with an employment contract arises only when "there is an interference with a contract between the plaintiff and a third party."

---

[1] The Court rejects defendant's argument that plaintiff fails to satisfy the first prong of the intentional interference with prospective economic advantage test because plaintiff neglected to specify exactly which of the two available jobs she applied for in her complaint. See Def's Mot. at 12. The pleading requirements under Fed. R. Civ. P. 12(b)(6) place a minimal burden on the plaintiff in order to survive a motion to dismiss, requiring merely a short and plain statement establishing that the plaintiff is entitled to relief and providing the defendant with sufficient notice. See Twombly, 550 U.S. at 555. Plaintiff's statements that she sought to apply for the open position with the Manager of Communications and that Ms. Bolton made the alleged comment are sufficient to provide defendant with notice of the claim and the grounds upon which it rests.

Donohoe, 546 F. Supp at 757. But here, plaintiff complains only of interference by her employer with her future employment with that same employer. Hence, plaintiff's claims against her employer BCBSA for its alleged interference with her future employment at BCBSA must fail.

## IV.  Negligent Supervision

Finally, plaintiff alleges that defendant failed to properly supervise Ms. Didawick and ensure that plaintiff was not given assignments outside of her job description and in conflict with the tax exempt status of BCBSA. See Opp'n at 19. To establish a claim for negligent supervision, a plaintiff must show that "(1) the . . . employee behaved in an incompetent or dangerous manner; (2) [the employer] had actual or constructive knowledge of the employee's incompetent or dangerous behavior; and (3) despite having this actual or constructive knowledge, [the employer] failed to adequately supervise the employee." Mitchell v. DCX, Inc., 274 F. Supp. 2d 33, 51 (D.D.C 2003); see also Giles v. Shell Oil Corp., 487 A.2d 610, 613 (D.C. 1985). Plaintiff has not done so.

To begin, plaintiff's claim must fail because the Court has dismissed her claims of wrongful discharge and intentional interference with economic advantage. She no longer has a claim that can serve as the common law predicate for the negligent supervision claim. Griffin v. Acacia Life Ins. Co., 925 A.2d 564, 576 (D.C. 2007); Carroll v. Fremont Inv. & Loan, 636 F. Supp. 2d 41, 54 (D.D.C. 2009). A common law claim of negligent supervision must be predicated on common law causes of action or duties otherwise imposed by the common law. Griffin, 925 A.2d at 576.

Moreover, plaintiff fails to provide adequate factual allegations to establish any dangerous or incompetent behavior on the part of the defendant. Plaintiff references trips to Starbuck's,

performing clerical work allegedly outside her job requirements, Ms. Didawick's general dislike for her, and alleged misuse of corporate resources. See Opp'n at 23; Compl. ¶ 76. This is not an instance of an agent of the employer engaging in inherently dangerous activity. Plaintiff must demonstrate that BCBSA knew or should have known its employee behaved in a dangerous or otherwise incompetent manner and that BCBSA, "armed with that actual or constructive knowledge, failed to adequately supervise the employee." Brown v. Argenbright Sec., Inc., 782 A.2d 752, 760 (D.C. 2001) (citing Giles, 487 A.2d at 613). Here, plaintiff has failed to offer any evidence that the defendant knew or should have known that Ms. Didawick behaved in an incompetent or dangerous manner in the past or even in the instant circumstance. This Court does not find that Starbuck's runs and one employee expressing dislike for another employee rise to the level of incompetent or dangerous behavior required to support the tort of negligent supervision.

Therefore, because plaintiff has not pled an underlying common law tort upon which a claim of negligent supervision can be based, and has not alleged sufficient facts to show incompetent or dangerous behavior, plaintiff's claim of negligent supervision must be dismissed.

## **CONCLUSION**

Accordingly, the Court will dismiss plaintiff's claims for breach of contract, intentional interference with prospective economic advantage, and negligent supervision, and will grant summary judgment in favor of the defendant on plaintiff's claim of wrongful termination in violation of public policy. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: December 21, 2010